Moses *v.* State

No. 43372 October 11, 1965 179 So. 2d 9

*Jack H. Young,* Jackson; *Robert L. Carter, Maria L. Marcus, Barbara A. Morris,* New York, N. Y., for appellant.

*Delos H. Burks, William A. Allain, Peter M. Stockett, Jr.,* Asst. Attys. Gen., Jackson, for appellee.

Lee, C. J.

Robert Moses was found guilty and sentenced for a misdemeanor, in which the affidavit charged that he "on or before the 4 day of October 1961, within the corporate limits of the City aforesaid, did then and there wilfully and unlawfully disturb the public peace by vio-

lent and loud offensive and boisterous conduct calculated to provoke a breach of the peace and leading to a breach of the peace, Against the peace and dignity of the State of Mississippi.''

The evidence showed that Moses was a teacher of mathematics in New York City before taking up his abode in McComb City in 1961. There he became a salaried employee of the Student Nonviolent Coordinating Committee. He had been engaged in conducting voter registration schools. His headquarters, near the Negro high school grounds, were over Burgland's Supermarket. There the signs, used in the demonstration, out of which this incident occurred, were made up. The lettering on them was as follows: ''STAMP OUT MISSISSIPPISM, FEAR THE TRUTH!'', ''WE STUDENTS PROTEST'', ''BRENDA AND LEWIS WERE REFUSED ADMITTANCE TO SCHOOL'', ''WHY WERE BRENDA AND LEWIS REFUSED ADMITTANCE?'', and ''LEE COULD BE ME''.

The Brenda and Lewis, referred to above, were Brenda Travis and Isaac Lewis, two teenagers, who had been suspended by the principal of the Negro high school because they got into trouble and were put in jail. This arose out of alleged misconduct and a violation of the law during certain activities in the McComb Greyhound Bus Station. The record does not disclose any appeal to, or requested hearing by, the governing authorities of the School District.

On the afternoon of October 4, 1961, shortly after school had been dismissed, approximately 100 of the junior and senior pupils from the Negro high school went to the headquarters of Robert Moses, where they obtained a number of the above described signs. Moses then arranged the pupils in pairs, and instructed them to parade down the city sidewalks. Several other nonresident fellow workers of Moses joined in the march and demonstration. Some of the witnesses, describing

Moses' control and leadership, testified that he was like a hen mothering her brood. They paraded over a substantial area of the City, traversing eighteen city blocks.

There was evidence by the State that the demonstrators were singing, shouting and chanting. The parade ended on the steps of the City Hall. Large numbers of white people were attracted to the scene and scuffling occurred on the steps of the City Hall between a bystander and one of the adult demonstrators.

The evidence was sufficient to show that this parade and demonstration, was fomented, organized, and directed by the defendant; but it was not shown that he had been guilty of violent, loud, offensive or boisterous conduct.

Regardless of the contempt which many may have for Moses in promoting a demonstration, largely participated in by immature teenage children, it appears that the State did not seek to prosecute him on that account or that there is such a criminal offense provided for under the law. The charge was that he unlawfully disturbed the public peace by violent, loud, offensive and boisterous conduct. The evidence for the State simply did not establish that charge.

This Court, in the case of Thomas v. State, 252 Miss. 527, 160 So. 2d 657 (1964), dealt with a situation which was more provocative than the facts, adduced in evidence, show this one to have been. The conviction in that case was affirmed by this Court. However on appeal, the Supreme Court of the United States, in its decision (380 U. S. 524, 14 L. Ed. 265 (1965) ) reversed the judgment of this Court and ordered the discharge. of Thomas.

In the recent case of Guyot v. State, 252 Miss. 509, 175 So. 2d 184 (1965), the opinion, citing Thomas v. State, *supra,* reversed the judgment of the trial court and discharged the appellant.

728

 ██ Since the evidence in this case fails to meet the burden required of the State, namely, to prove the guilt of the defendant beyond reasonable doubt, it follows that this cause must be reversed and the appellant discharged.

Reversed and appellant discharged.

All Justices concur.